# THE INTENDANT AND COUNCIL OF THE TOWN OF MARION v. CHANDLER.

1. The Circuit Court may take jurisdiction by *certiorari*, of a case in which the intendant of a corporate town has rendered a judgment against a person resident within the same, for the violation of one of its by-laws.

2. An act incorporating a town, authorised the enactment of by-laws " to restrain and prohibit every species of gambling, drunkenness, &c.; to grant licences to the retailers of spirits and liquors; to regulate and restrain them when deemed a nuisance;" and to pass all such by-laws consistent with the constitution and laws of this State, as may be necessary, &c. Under this grant of power, the corporation passed an ordinance prohibiting the retailing of spirituous or fermented liquors within the corporate limits, without first paying to its treasurer the sum of one thousand dollars for a license for one year; and for retailing without such licence, a penalty of ten dollars a day was imposed, and made recoverable by warrant before the intendant, &c.: *Held*, that this by-law was authorized by the act of incorporation.

WRIT of error to the Circuit Court of Perry.

This was a proceeding commenced by a warrant issued by the Intendant at the suit of the plaintiff, for the breach of one of its by-laws, which imposed a penalty for the retailing of "spirituous or fermented liquors, within the corporate limits of the town of Marion, without first obtaining a licence for one year from the clerk of the said corporation." Upon the return of the warrant, a judgment was rendered against the defendant for the sum of ten dollars and costs. Afterwards the proceedings were removed by *certiorari* to the circuit court, at the defendant's instance, where the plaintiff moved that the same might be dis-

missed. But this motion was overruled, the judgment of the Intendant reversed, and the plaintiff taxed with the costs.

T. Chilton and H. Davis, for the plaintiff—made the following points: 1. The circuit court had no jurisdiction of the case as it arose under the by-law of a corporation. 2. The plaintiff in virtue of its corporate authority might prohibit the retailing of spirituous liquors within the town, unless a licence was first obtained; and it was competent for the corporate authorities to prescribe the price. [Acts of Leg. 1834–5, p. 58–9; Acts of 1843–4, p. 57; 7 Cow. Rep. 585, 606; Ang. & Ames on Corp. 64; 3 Ala. Rep. 137–9, 141–3; State v. Estabrook, at this term.]

No counsel for the defendant.

COLLIER, C. J.—There can be no question, but it was competent for the circuit court in virtue of its general jurisdiction to award a *certiorari* in the present case. *Ex parte* Tarlton, [2 Ala. Rep. 35,] determines such to be the appropriate remedy where a new jurisdiction is created by statute, and the court exercising it, proceeds in a summary method, or in a course different from the common law. If the circuit court could not correct or annul an improper judgment rendered by an officer of the corporation under one of its by-laws, the party aggrieved would be remediless; for this court, under its general superintendence and control of inferior jurisdictions, could not interfere, until the cause had been acted on, either by the circuit or county court, or court of chancery. [John, a slave, v. The State, 1 Ala. Rep. 95; The State *ex rel.* Williams, id. 342.]

The second section of the act of 1835, "to incorporate the town of Marion," enacts, "that the said corporation shall have power to ordain all such ordinances and resolutions, and make all such regulations, as may by them be deemed necessary for the good order and government of said corporation, which may extend to the preservation of health, to prevent and remove nuisances, &c.; to restrain and prohibit every species of gambling, drunkenness, &c.; to grant licences to the retailers of spirits and liquors; to regulate and restrain them when deemed a nuisance, &c., and in general to pass such by-laws not contrary to the constitution of this State, and the laws thereof, as the corporation shall from time to time deem expedient and necessary to carry into effect, the meaning and intention of this act, &c."

Under the authority of this section, the corporation, at the request of a large majority of the adult males, resident within the town, passed an ordinance inhibiting the retailing of spirituous or fermented liquors within the corporate limits, without first paying to the treasurer of the corporation, the sum of one thousand dollars, for a licence to be issued by the clerk, which shall be operative for one year. For each days infraction of this ordinance, a penalty of ten dollars is recoverable by warrant, before the Intendant, &c.

The object of the corporation in requiring retailers to pay for a licence, a sum so much beyond what the legislature have required by the general law upon the subject, was doubtless, to prohibit the business of retailing within the limits in which its legislation operates; and we will therefore consider the ordinance as prohibitory. The question then is, was the enactment of the ordinance within the scope of the powers conferred by the charter.

It is said that the by-laws of a corporation must not be inconsistent with its charter; for this instrument creates it an artificial being, imparts to it, its power, designates its object, and usually prescribes its mode of operation. It is the fundamental law of the corporation; and in its terms and spirit, is a constitution to the petty legislature of the body, acting by and under it. [Ang. & A. on Corp. 281–2.] The *incidental* power of a corporation to make by-laws results from the necessity of such a power, to enable the body politic to answer the purposes for which it was created, and can be applied to nothing else; and though the power is conferred by the express terms of the charter, yet the reasonable construction of this particular grant is, to consider it as a mean to the company for the accomplishment of the purposes of the principal grant of incorporation, and of course to be limited in its exercise to those purposes. [Id. 268.] The legislative power of a corporation is restricted by the constitutional and statute law of the State in which it is established. Indeed, whenever a by-law seeks to alter a well settled and fundamental principle of the common law, or to establish a rule interfering with the rights, or endangering the security of individuals or the public, a statute or other special authority, emanating from the creating power, must be shown to legalize it, either expressly or by implication. [Id. 275.]

Again: The power to make by-laws, supposes the power to enforce them by pecuniary penalties, proportionable to the of-

fence.   The reasonableness of the penalty must be determined by the nature of the offence, but it must be for a sum certain.— [Ang. & A. on Corp. 302; The Mayor, &c. of Mobile v. Yuille, 3 Ala. Rep. 137.]   Whether a by-law is reasonable or not, is a question for the court solely; but to set it aside, for unreasonableness, there should be no equipoise of opinion upon the matter, but it should be demonstrably shown.  [Ang. & A. on Corp. 298–9.]

It has been held that a by-law of a municipal corporation imposing a penalty for an offence, is not void, merely because a general law of the State prescribes a punishment for the same offence.   [Rogers v. Jones, 1 Wend. Rep. 237.   See also, 1 Bay's Rep. 382.]

We will not inquire whether, under the first part of the section which authorises the adoption of general police regulations, it was competent for the corporation to have enacted the ordinance in question, but we will inquire whether the authority "to grant licences to the retailers of spirits and liquors; to regulate and restrain them when deemed a nuisance," does not confer upon the corporation the power to prohibit retailing within its limits. "Regulate" may be thus defined, viz: To adjust by rule, or established mode—To put it good order—To subject to rules or restrictions: "Restrain," means to check; to hold from action, &c. to repress; to suppress; to abridge; to limit; to confine; to withhold; to forbear.

It will be admitted, that the term "grant," by implication, necessarily conferred the authority to prescribe the manner in which licences to retail should be obtained.   We do not mean by this, that it invested the corporation with unlimited power over the subject, and that it was competent for it to fix the price of a licence at any sum, no matter how large, or that it could impose unreasonable restrictions upon the mode of obtaining it.— But the charter does not merely authorise the corporation to *grant* licences; it goes further and gives the power to *regulate* retailers, and when deemed a nuisance, to *restrain* them.   That is, to declare the mode in which the business shall be carried on, to subject it to rules and restrictions, that good morals may be preserved; and if this shall become impracticable, and it is supposed that retailers incommode or annoy, or are offensive or noxious to the people of the town, then to withhold licences, and thus suppress the business.  This is but a mere para-

The Intendant and Council of the town of Marion v. Chandler.

phrase of the grant of power we are considering, and we think, is so palpably just, as scarcely to require further amplification.

It occurred to us upon the first presentation of the question, that it was well worthy of inquiry, whether it was competent for the corporation to do more than restrain retailers whom it had previously licensed, or whether its laws must not be directed against individuals who were guilty of a nuisance. But more reflection has satisfied us, that it was within the sphere of its competency to repress the business of retailing, if deemed a nuisance. Upon any other hypothesis, the term "restrain," would be entirely inoperative; for the terms "grant" and "regulate," would confer ample power, so far as retailers are individually concerned, to adjust their mode of carrying on the trade, and by appropriate rules to keep them in order; and if not, to withdraw a licence, at least to refuse its renewal for a breach of any of the regulations of the corporation.

We are not to understand that "nuisance" was used in the charter in a sense strictly technical, but in its usual and popular acceptation; this is indicated by the connection in which it is found. If it was intended thereby to designate an offence known to the law, then it would be necessary that there should be a trial and conviction in order to establish its commission. No trial is contemplated, but it is enough if retailing is *"deemed* a nuisance."— Here, the corporate power to whom pertains the functions of local legislation, are to determine, whether *retailing is a nuisance*, so as to warrant the exercise of the extraordinary and high power of restraining it.

It follows from what we have said, that the by-law under which the proceeding in the present case was instituted, was authorised by the power conferred by the act of incorporation.— The penalty prescribed as a consequence of its violation seems to be reasonable, and is not objectionable for uncertainty. No question has been made as to the power of the legislature to confer upon a corporation of its creation, the right to prohibit the retailing of liquors within its limits; and as we are inclined to think that such an act is within the competency of legislation, we will not now attempt to consider the point.

Without adding any thing as to the expediency of the restraining by-law, in a town which its inhabitants are seeking to make distinguished for its institutions of learning, it may be remarked that it was demanded by the almost unanimous voice of the peo-

ple who were authorised to decide; and is not consequently the
ill judged or inconsiderate act of the few who enacted it.

Our conclusion is, that the judgment of the circuit court is re-
versed, and the cause remanded.