## WELCH *vs.* MAYOR AND COUNCIL OF MARION.

[ACTION TO RECOVER MONEY PAID UNDER PROTEST.]

1. *Appeal from non-suit taken on rulings on pleadings; practice of taking not approved.*—The practice of taking a non-suit on sustaining a demurrer to the complaint in the court below, and appealing from the judgment on demurrer to this court, and here moving to set aside the non-suit, is not approved. By such a ruling in the court below, the complainant is not compelled to take a non-suit.

2. *Marion, town of; power of under charter to license retail liquor dealer.*—The town of Marion, in Perry county in this State, is authorized by its act of incorporation and its by-laws to require a person proposing to sell spirit-uous liquors by retail in the limits of said town, to purchase a license from the corporate authorities for the same, although he has obtained a State and county license; and moneys paid for such license, although paid under protest, can not be recovered back, in an action of debt or assumpsit against said corporation.—13 Ala. 341, 343; Pamph. Acts 1869–70, pp. 110–17, § 16.

APPEAL from the Circuit Court of Perry.
Tried before Hon. J. Q. Smith.

The appellant brought this action against the appellee (the Mayor and City Council of Marion) to recover amounts paid by him, under protest, to the corporate authorities of Marion for a license to carry on the business of retailing spirituous and vinous liquors within the corporate limits of the town of Marion.

The *gravamen* of the complaint was, that appellant paid for and took out, on the 3d day of January, 1870, "a license to retail spirituous liquors, from both the State and county," authorizing him to carry on his business as a retail dealer in spirituous liquors, at Marion, Ala., from January 1st, 1870, to 31st December, 1870; that on the 16th of February, 1870, the general assembly incorporated said town under the name and style of the Mayor and Council of Marion; that said mayor and council, under and by virtue

their charter, passed an ordinance requiring every person, before entering on said business of retailing liquors, &c., to pay thirty dollars a month into the corporate treasury for license, &c. Demands being made upon appellant by the proper officer, he, "protesting each time against the right of the said mayor and city council to require of him a license," &c., paid sums amounting in the aggregate to the amount sued for, for a license to carry on his business in the corporate limits

Nothing is said in the complaint as to the existence of any corporation at Marion before the act of the general assembly of February 16th, 1870.

The court sustained the demurrer to the complaint, and plaintiff took a non-suit with bill of exceptions, with leave to move to set aside the same in the supreme court.

J. C. REID, for appellant.

LAWSON & BRAGG, contra.

PETERS, J.—The practice of taking an appeal from an order of non-suit taken in consequence of rulings on the pleadings, has been recently condemned by this court as inadmissible under our statute. The decision on the demurrer can not be reviewed on appeal in this way.—*Darden v. James*, January term, 1872, and authorities there cited. There might have been a judgment final on the demurrer, if the plaintiff failed or refused to plead over, and from this judgment an appeal might have been taken to this court. The above decision necessitates the affirmance of the judgment in this case; and this opinion might end here. But the deep interest felt in the cause by the learned counsel for the appellant, and the apparent novelty of the question raised in the arguments, will serve as an excuse for a brief discussion of the whole case upon the merits.

No question is more thoroughly well settled, by a long series of decisions of this court, than that of the power of a town or city corporation in this State to license and regulate the sale of spirituous liquors within its corporate limits; provided there is a sufficient legislative grant for this

purpose contained in the act of incorporation, and the mode of regulation is not in conflict with the law and Constitution of this State, or the Constitution of the Union. And so far as I know the latter instrument does not in any way interfere with the power of the State to grant licenses or control its town or city corporations.—*Dorman v. The State*, 34 Ala. 216; *Osborne v. Mayor, &c., of Mobile*, 44 Ala. 493; *Mayor, &c., v. Yuille*, 3 Ala. 137; *Intendant, &c., v. Chandler*, 6 Ala. 899; *Intendant, &c., v. Mullins & Barfield*, 13 Ala. 341; *Carroll et al. v. Mayor, &c., of Tuskaloosa*, 12 Ala. 173. In this case, the act of incorporation very clearly confers "the power and authority" upon the town corporation "to license and regulate retailing of liquors within the corporate limits." This is the language of the general assembly used in the grant of the franchise.— Pamph. Acts 1869–70, pp. 110–17, § 16, No. 127. So far, then, as appears from the law referred to in the complaint, the power to exact the additional license existed, and the act was not unconstitutional and void. It is not alleged that the license from the State was exclusive of any other license, or that the license from the county had this effect. The possession of the State and the county licenses did not necessarily limit or supersede the powers of the corporation, or preclude it from requiring a license also. All these rights to demand the separate licenses could subsist in harmony together. In the case of the *Intendant of Greensboro v. Mullins, supra*, Chief-Justice COLLIER declares, as the judgment of the court, that, "as a municipal regulation, it is competent for an incorporated town or city, when authorized by its charter, to require one who is licensed to retail spirituous liquors by the county court to purchase from the corporate authorities the *privilege* of retailing within its limits."—13 Ala. 341, 343; 6 Ala. 899.

The license, then, is a mere "privilege," and not a "contract," in the constitutional sense of this latter term. Nor can it be regarded as a "tax," strictly speaking. This latter is a peremptory charge for the public use, which a party must pay whether he will or not, if he is able. A license is a matter of favor or election, which the party seeking to

use it may decline, if he will.—*In re Mayor, &c., of New York*, 11 John. 77; 6 John. 92; 13 Ala. 343, *supra*. Its whole extent is, to save the possessor harmless from the penalty of a violation of the law, which would otherwise occur from the same act, without the license.—*Brent v. The State*, 43 Ala. 297. Besides, it is taken and held, as any other mere privilege, under all the limitations which the legislature had established at the time of its acceptance, or which may be legally established afterwards. The whole system of the laws of the State must be taken together. A license under one statute is to be held under the limitations imposed by the whole body of the statutory code, unless the law under which the license is granted shows an exception. There is nothing of this sort shown in this case. It is known to this court, as a part of the law of the land, that Marion has long been an incorporated town, and that such incorporation existed at the date of the licenses referred to in appellant's complaint in the court below.—6 Ala. 899, *supra;* Acts Gen. Assembly of Ala. 1834–35, pp. 58, 59; also, Acts 1843–44, p. 57. The charter of February 16, 1870, was but a continuation of the corporate powers of the same town within its former limits. There was no interregnum between the two municipal governments, under the old charter and the new one. The fact that the license was demanded and issued under the new corporation makes no difference. The appellant, when he sought to locate his retail establishment at Marion, did so with a full knowledge of the consequences of the limitations by which the place was liable to be surrounded. If his seat turned out to be less comfortable than he hoped, it was by his own election. He brought with him what was unwelcome to his neighbors, and they have exercised their right to regulate and restrain it, as their corporate powers authorized them to do, by their license. And I am reluctant to believe that the general assembly intended to to interfere with their right in any way, by any general law outside of the act of incorporation itself, whatever might be the date of the act of incorporation. In this phase of its presentation, the appellant's case also clearly fails.

Besides, it does not appear that there was any fraud, any mistake of the facts, or any legal force that compelled the appellant to pay the money sought to be recovered to the town corporation. It was, then, a voluntary payment, under a full knowledge of all the facts. The mere protest, without legal compulsion, does not rescue such a payment from the character of a voluntary payment. Such a payment can not be recovered back.—*Rutherford v. McIvor*, 22 Ala. 750, 756. The demurrer was properly sustained, and the judgment of the court below is free from error.

Therefore, the judgment of the court below is affirmed.