## City of Chicago v. William Wilkie et al.

1. Ordinances—*When a Court of Equity Will Not Restrain Enforcement of.*—A court of equity will not entertain a bill to restrain prosecution under a municipal ordinance on the ground of the alleged illegality of such ordinance. The validity of an ordinance of the character here involved can only be tested by appeal from a fine imposed under it.

2. Same—*Exceptions to the Rule that a Court of Equity Will Not Restrain the Enforcement of an Ordinance.*—There are two exceptions to the general rule above stated, viz.: First, to prevent irreparable injury; second, to prevent a multiplicity of suits.

3. Same—*May Derive Validity from Different Grants of Power.*—An ordinance may derive its validity from several different grants of power, and not depend solely upon any single section or clause of a statute.

4. Cities and Villages—*Police Powers.*—The city council in cities has power to regulate the police of the city, to pass and enforce all necessary police ordinances, and to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.

5. Police Powers—*Includes Regulation of All Such Business and Occupations as Affect the Health of the People.*—The express power reposed in the common council of a city to do all acts necessary or expedient for the promotion of health, by implication confers the power to regulate all such business and occupations as affect the health of the people.

6. Same—*Ordinances and Regulations for Preservation of Health.*—All ordinances and regulations for the preservation of the health and safety of the inhabitants are within the police power of the city of Chicago. The power to pass and enforce all necessary police ordinances is expressly conferred upon the common council.

7. Construction of Statutes—*Act of June 10, 1897, Licensing Plumbers.*—The act of the General Assembly entitled "An act to provide for the licensing of plumbers and to supervise and inspect plumbing," does not expressly or impliedly deprive cities and villages of the power to require a license in order to conduct the business of a master plumber.

**Bill for Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. John Gibbons, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded with directions. Opinion filed April 17, 1900.

Charles M. Walker, corporation counsel, Colin C. H.

FYFFE and WILLIAM HOWARD FITZGERALD, assistant corporation counsel, attorneys for appellant.

No appearance by appellees.

MR. PRESIDING JUSTICE HORTON delivered the opinion of the court.

In this case seventy-nine master plumbers (appellees), joining as complainants, filed a bill in chancery in the Circuit Court to enjoin the city of Chicago (appellant) from enforcing what is commonly known as the "Plumbers' License Ordinance." To said bill, as amended, appellant filed a general demurrer, which was overruled, and a final decree entered, perpetually enjoining appellant as per prayer of the bill.

The bill charges that the city authorities have made demand upon appellees to take out licenses and pay therefor a license fee of thirty dollars each, and threaten to arrest appellees should they engage in their business of plumbing in said city without having procured such licenses, and that they fear that should appellees so engage in their said business that they will be prosecuted and fined by a magistrate and that, in case such fine is not paid, they will be arrested and imprisoned.

It is also charged in said bill that appellees believe said ordinance to be unconstitutional and void, and that they have been examined and received a certificate as to their qualifications from an examining board created under Sec. 500, Hurd's Stat. of Ill., as to Cities and Villages (Sec. 3, Act of '97, as to licensing plumbers), and are thereby authorized to conduct their said business as master plumbers without procuring a license under said ordinance.

First. Has a court of chancery jurisdiction to entertain this bill? That is the question here first presented. It is the well-settled law of this State that, as a general rule, a court of chancery will not interfere to restrain the enforcement of a municipal ordinance where the party complaining has a full and complete remedy at law.

City of Chicago v. Wilkie.

In Poyer v. Village of Des Plaines, 123 Ill. 111, 115, the court says :

" The legality or illegality of the ordinance is purely a question of law, which the common law court is competent to decide. * * * When ordinances have been enacted by the proper authority, a court of equity will not interfere, by injunction, to restrain their enforcement in the appropriate courts upon the ground that such ordinances are alleged to be illegal, or because of the alleged innocence of the party· charged."

Yates v. Batavia, 79 Ill. 500, was a bill filed to enjoin the prosecution of suits and to settle the legality of an ordinance concerning the " sale or giving away of intoxicating liquors." The court disposed of the contention in these words :

" A court in chancery has no jurisdiction of the subjectmatter of this litigation, nor is it in the power of the parties to waive the question of jurisdiction and compel it to try the cause. Whatever defense, if any, existed to the several actions against complainants, was complete in a court of law where they were pending, and the court very properly dismissed them from that forum."

In Skakel v. Roche, 27 Ill. App. 423, the court states the rule very clearly in these words (page 426):

" The general rule is well settled, and has been repeatedly announced in this State, that a court of equity will not entertain a bill to restrain prosecution under a municipal ordinance on the ground of· the alleged illegality of such ordinance. The validity of an ordinance of the character here involved can only be tested by appeal from a fine imposed under it."

To the same effect are Chicago Pub. Stk. Exchange v. McClaughry, 148 Ill. 372; C., B. & Q. R. R. Co. v. City of Ottawa, 148 Ill. 397; High on Injunctions, Secs. 1243 and 1244; Strang v. Richmond, P. & C. R. R.'Co., 93 Fed. Rep. 71.

It is held in Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, that there are two exceptions to the general rule above stated, viz.: "First, to prevent irreparable injury, and second, to prevent a multiplicity of suits " (p. 32). Equity jurisdiction was there entertained upon the theory that otherwise irreparable injury would result to the complainant.

In City of Chicago v. Collins, 175 Ill. 445, the bill was filed to enjoin the enforcement of a city ordinance providing for the licensing of vehicles. In that bill there were three hundred and seventy-three complaints. By the stipulated facts it appeared that there were 300,000 persons in Chicago "similarly situated," and in whose behalf the bill was filed. The ordinance involved exacted a license fee from all owners of wheeled vehicles which are used upon the public streets of Chicago for private purposes exclusively. It was there held that that ordinance was void and that upon the facts there appearing, a court of equity had jurisdiction upon the theory that it would prevent a multiplicity of suits.

The court below, sitting as a court of chancery, had jurisdiction to entertain the bill of complaint in this case for the reason that it would prevent a multiplicity of suits.

Second. Are the city ordinances valid which provide that master plumbers must procure a city license?

Appellees have not seen fit to appear in this court and aid the court in the investigation of authorities. The cases examined by us are mostly included in the numerous citations by counsel for appellant.

The bill of complaint, referring to "The Revised Code of Chicago," passed April 8, 1897, states that it is therein provided by Sec. 1415, as follows:

"Any person desiring to engage in or work at the business of plumbing in the city of Chicago as a master plumber, shall first obtain a license so to do for each establishment or place of business to be maintained by him, and shall pay for such license a fee of thirty ($30) dollars per year; said license fee to be paid for during the month of May of each and every year."

And that it is therein provided by Sec. 1421, as follows:

"No person shall perform any plumbing work without having first obtained the license herein provided for, under penalty of a fine upon conviction of not less than fifty ($50) dollars nor more than one hundred ($100) dollars for each and every offense."

The bill also refers to an enactment by the general assem-

bly of this State entitled " An act to provide for the licensing of plumbers and the supervising and inspecting of plumbing," approved June 10, 1897 (Hurd's Stat., Ch. 24, Sec. 498). Said act provides that in every city of 10,000 inhabitants or more, a board of examiners of plumbers shall be appointed. Sec. 4 of said act is as follows:

" Said board of examiners shall, as soon as may be after the appointment, meet and then designate the times and places for the examination of all applicants desiring to engage in or work at the business of plumbing within their respective jurisdiction. Said board shall examine said applicants as to their practical knowledge of plumbing, house drainage and plumbing ventilation; and, if satisfied of the competency of such applicants, shall thereupon issue a certificate to such applicant authorizing him to engage in or work at the business of plumbing, whether as master plumber, or employing plumber, or as a journeyman plumber.

" The fee for a certificate for a master plumber or employing plumber shall be five ($5) dollars; for a journeyman plumber it shall be one ($1) dollar. Said certificate shall be valid and have force throughout the State, and all fees received for said certificates shall be paid into the treasury of the city, town or village where said certificates are issued."

By amendment to said bill it is charged that the common council of the city of Chicago, after said enactment by the general assembly, passed an ordinance creating a board of examiners, as provided by said act, and stating the substance of said ordinance. Sec. 5 of said ordinance, quoted in full in brief of counsel for appellant, is as follows:

" Section 5. Said board of examiners shall, as soon as may be after appointment, meet at such time and place as the commissioner of health may designate, and proceed to carry out the provisions of this ordinance. Said board shall examine applicants as to their practical knowledge of plumbing, house drainage and plumbing ventilation, and if satisfied as to the competency of any such applicant, and upon receipt of the fee hereinafter provided for, shall issue a certificate to such applicant authorizing him to engage in or work at the business of plumbing, either as master plumber, as employing plumber, or as a journeyman plumber, as the case may be, and according to the terms of the application made by such applicant. Provided, however,

that the issuance of the certificate and the payment of the examination fee as herein provided shall not entitle any master plumber or employing plumber to whom such certificate is issued to engage in the business of master plumber or employing plumber in the city of Chicago, until such master plumber or employing plumber has obtained a license so to do, in accordance with the provisions of section 1415, article 1, chapter 50, of the Revised Code of Chicago (1897). The fee for the examination and certificate of a master plumber or employing plumber shall be five ($5) dollars, in addition to the sum charged for a license fee, as provided for in section 1415, Revised Code, as aforesaid, and for the examination and certificate of a journeyman plumber it shall be one ($1) dollar. All fees received for said examinations and certificates shall be paid into the city treasury."

By the statute of this State which relates to cities, villages and towns, it is provided that the "city council in cities" shall have power (Hurd's Stat., Ch. 24, Sec. 62, clause 66):

" To regulate the police of the city or village, and pass and enforce all necessary police ordinances."

(Clause 78):

" To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

It is the theory of the bill of complaint that said sections 1415 and 1421 of the city ordinances are repealed or superseded by said legislative enactment of 1897; that appellees having received certificates as master plumbers from said " Board of Examiners of Plumbers," they are thereby authorized to " work at the business of plumbing in the city of Chicago" as master plumbers, without procuring any other license or authority so to do, and that neither sections 1415 and 1421, nor section 5 of said ordinance of 1898 can be enforced as against them.

" An ordinance may derive its validity from several different grants of power, and not depend solely upon any single section or clause of a statute." Gundling v. City of Chicago, 176 Ill. 346; Kinsley v. City of Chicago, 124 Ill. 359.

The express power reposed in the common council " to do all acts," necessary or expedient for the promotion of health by implication, confers the power to regulate all such business and occupations as affect the health of the people. Kinsley v. City of Chicago, *supra;* Chicago Pkg. Co. v. City of Chicago, 88 Ill. 221; People v. Chicago Gas Trust Co., 130 Ill. 283; C., P. & W. Ry. Co. v. Marseilles, . 84 Ill. 644.

All ordinances and regulations for the preservation of the health and safety of the inhabitants are within the police power of the city of Chicago. The power to " pass and enforce all necessary police ordinances " is expressly conferred upon the common council.

But whether express or implied, clearly the power exists in the common council to regulate the business of master plumbers in said city. In considering said two clauses, 66 and 78, the Supreme Court in the very recent case of Gundling v. City of Chicago, 176 Ill. 340, 348 (affirmed by the Supreme Court of the United States), says:

" Under these two provisions express authority is granted the municipality to pass all ordinances or requirements tending to promote the public health, morals, security, comfort and welfare of the community. Such legislation is included within the provisions authorizing the enactment of police regulations. The most important of police powers is that of caring for the health of the community, and that is inherent in a municipality, and may be exercised whether expressly granted or not, because the preservation of the health of the public is indispensable to the existence of the municipal corporation. Ferguson v. City of Selma, 43 Ala. 400.

" The regulation of the police power is hardly susceptible of exact definition, as the exigencies of each case are varying, and the cases are innumerable where the health of the inhabitants of the municipality may be in some degree endangered. When the city council considers some occupation or thing dangerous to the health of the community, and, in exercise of its discretion, passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation, as being humane and essential to the preservation and protection of the community. Municipalities are

allowed a greater degree of liberty of legislation in this direction than any other. The necessity for action is often more urgent and the consequences of neglect are more detrimental to the public good in this than in any other form of local evil. It being clear that the public health and welfare of a large class in the community would be subserved and protected by ordinances regulating the sale of tobacco in one of its manufactured forms, an ordinance directed to the protection of the health or welfare of that particular class of the community would be a police regulation within the power of a city to enact under the power expressly granted by paragraphs 66 and 78. An ordinance of this character is not in conflict with any principle of the common law or with any public or general statute, and infringes no private right not necessarily infringed in the interests of good government. It subserves the public welfare, protects the health of the community, and is included within the express powers granted the city council. The ordinance was not void."

In the case last cited the point was specifically presented and considered that the ordinance, which provided that no person should keep and expose for sale cigarettes in the city of Chicago without having first procured a license, was null and void for want of power in the common council to pass the same. But the Supreme Court held that the ordinance was within the express powers conferred by said clauses 66 and 78. It will not be contended, we apprehend, by any one, that the regulation of plumbing is not material to the health of the people of this city.

Third. It is also the theory of said bill of complaint that appellees having obtained certificates from said "Board of Examiners of Plumbers" can not be required to obtain license to conduct the business of master plumbers in said city.

That was not the intention of the legislature and is not the construction to be given to said act, approved June 10, 1897. So far as we are advised, this question has never been passed upon by the Supreme Court or any Appellate Court in this State. Similar questions have been considered, however, by courts in sister States. Simpson v. Savage, 1 Mo. 359; Ex parte Siebenhauer, 14 Nev. 365; Welch v. Mayor, etc., 48 Ala. 291; Ambrose v. State, 6 Ind. 351.

So far as appears by said act a certificate by the Board of Examiners of Plumbers is valid during the lifetime of the party. There is no provision for its revocation or termination or requiring a re-examination. It is also provided that " said certificates shall be valid and have force throughout the State." There is no reason to believe, either from the language of said act or for any other reason apparent to us, that it was intended by the legislature that a certificate by said board in Chicago should authorize the party named therein to conduct the business of a plumber in every other city and every village and town in the State having 10,000 inhabitants in defiance of their local laws and ordinances. Neither was it intended that a certificate issued by such a board in any one of the smaller cities of this State should authorize a person to conduct such business in the city of Chicago where the conditions are or may be entirely different and in defiance of the ordinances and regulations there in force adopted by the common council or prescribed by the board of health or other proper authorities. The said ordinance requiring that master plumbers shall procure a license and pay a license fee therefor are valid and are not rendered null and void by the said legislative enactment approved June 10, 1897.

For the reasons indicated the decree of the Circuit Court is reversed and the cause remanded with directions to dismiss said bill of complaint for want of equity.