[Briggs v. Birmingham Railway, Light & Power Company.]

# Briggs *v.* Birmingham Railway, Light & Power Company.

## *Death Action.*

(Decided June 30, 1914. Rehearing denied July 25, 1914.
66 South. 95.)

1. *Municipal Corporation; Ordinances; Presumption.*—An ordinance assuming to exercise a power within the granted powers of the municipality not void on its face is presumed to be reasonable and valid until the contrary is shown.

2. *Same; Reasonableness.*—Whether an ordinance of a municipality is unreasonable is a question to be determined by the court, and not for the jury.

3. *Same; Validity.*—The unreasonableness of an ordinance must be clearly shown before the courts will declare such ordinance void for unreasonableness.

4. *Negligence; Proximate Cause.*—A person guilty of negligence is responsible for all the consequences which a prudent, experienced man, acquainted with all the attendant circumstances, would have foreseen.

5. *Same.*—Unless the evidence clearly shows that the negligence of defendant was not the proximate cause of the injury complained of, that question is for the jury.

6. *Electricity; Regulation; Ordinances.*—Within its police powers a city may enact ordinances requiring the insulation of the metal portion of arc lights, provided they are reasonable regulations.

7. *Same; Injury; Action.*—Under the evidence in this case, it war a question for the jury whether the negligence of defendant in not insulating the exposed portion of its ac light as required by the ordinance was the proximate cause of the death of plaintiff's intestate.

8. *Same; Contributory Negligence.*—One using the streets of a city may assume that an electric light company has complied with the ordinance requiring the insulation of the exposed metal parts of arc lights, and hence, it was not contributory negligence in bringing a high metal engine into a place where it accidentally came in contact with an uninsulated arc light, through which a deadly current was passing.

(Mayfield, J., dissents.)

APPEAL from Birmingham City Court.

Heard before Hon. WILLIAM M. WALKER.

[Briggs v. Birmingham Railway, Light & Power Company.]

Irene Briggs, as administratrix of the estate of H. W. Briggs, deceased, brings her action against the Birmingham Railway, Light & Power Company, for damages for the death of her intestate, caused by a high electric current. Judgment for defendant and plaintiff appeals. Reversed and remanded.

ALLEN & BELL, for appellant. Electricity is highly dangerous, and care in the use thereof must be commensurate.—*B. R. L. & P. Co. v. Murphy,* 56 South. 817; *So. B. T. & T. Co. v. McTyer,* 137 Ala. 612. The duty to exercise a high degree of care exists in favor of all persons likely to be injured at a place where they had a right to be for pleasure or business.—25 L. R. A. 552; 16 L. R. A. 43; 107 Pac. 778. No excuse that the injury in its manner of occurrence could not be reasonably anticipated.—21 A. & E. Enc. of Law 488; 44 S. W. 257. It was immaterial that other causes for which defendant was not responsible may have contributed to the injury. —*McKay v. So. Bell,* 111 Ala. 237; *Enslen v. New Orleans,* 21 South. 153; 2 Elliott's Road & Streets, 821. The proximate cause of an injury by coming in contact with a wire in a street is the condition of the wire.—*Jones v. Finch,* 128 Ala. 217; 89 S. W. 865; 54 Pac. 960. The violation of a municipal ordinance is negligence.—*Anniston E. & G. Co. v. Elwell,* 144 Ala. 317; *L. & N. v. Webb,* 90 Ala. 185; *A. G. S. v. Anderson,* 199. The ordinance introduced was valid.—31 L. R. A. 798; 170 U. S. 78; 107 N. Y. 593.

TILLMAN, BRADLEY & MORROW, for appellee. The sustaining of the demurrers to counts 3 and 4 was without injury.—*Frederick v. Coosa P. & F. Co.,* 59 South. 702; *L. & N. v. York,* 128 Ala. 305; *Jones v. Finch,* 128 Ala. 217. The 4th plea was not subject to the criticism aimed

at it.—*Pace v. L. & N.*, 52 South. 52. The evidence fails to show any negligence on the part of defendant, and it is patent and undisputed that intestate was also negligent.—34 S. E. 885; 69 Atl. 282; 70 Atl. 874; 92 Pac. 62; 102 N. W. 89. The evidence introduced did not attempt to construe the ordinance, but simply to explain what the terms in the ordinance meant in the electrical engineering work.—*A. G. S. v. Roach,* 110 Ala. 266.

McCLELLAN, J.—Appellant's intestate, Herbert W. Briggs, was killed January 20, 1911, by electricity, under circumstances to be stated. The action is for damages for his wrongful death.

Intestate was, when killed in the employment and service of the Southern Bitulithic Company, which was then engaged in performing its contract with the city of Birmingham to pave the intersection of Twenty-first street and Avenue G, public throughfares in that city. Intestate's duty, which he was performing when stricken, was as engineer of a concrete mixer. This machine was so constructed as to allow its movement in or over a street by means of its own engine power. The engineer's proper place when the machine was moving was on the ground beside it with his hand on the steering wheel, which wheel was designed to control, in a limited sphere, the direction of the machine. He was so related to the machine at the time he was killed.

Above the center of intersection of the thoroughfares mentioned a street arc light was swung from a cable extending from opposite corners of the square of intersection. This light was put there, maintained, and operated by the light and power company (appellee) under a contract with the city of Birmingham. The frame for the light cleared the street surface by a fraction over 13 feet. The machine (its "gooseneck") of the paving com-

pany rose a fraction over 14 feet from its plank way (laid by hand ahead of it on the surface of the street). It was determined by the superior (to the engineer) representative of the paving company to move the machine to another part of the space in the intersection of these streets, beyond, generally (from the point where the machine was at rest), the point in the intersection above which the light frame was hanging. The engineer was ordered to move the machine, plank was laid as indicated, and an employee of the paving company, equipped with a stick or piece of scantling for the purpose, was placed on the "gooseneck" of the machine to shunt and hold aside, for the passage of the machine, the light's frame immediately toward which the machine's direction was charted. The employee put the piece of wood against some part of the light frame and pushed it clear of the sweep of the machine's top section, but the wood slipped off the frame of the light, the light swung back to its perpendicular, and the metal rim or metal shade of the frame came in contact with the hoisting wire or chain on the machine, through which the deadly electrical current passed to other metal parts of the machine, and thence into the hand (at the steering wheel) and body of Briggs, instantly killing him. These circumstances were not the subjects of dispute in the evidence.

Section 54, p. 176, of the Code of the City of Birmingham, as revised by Mr. Weakley, was admitted in evidence, and is as follows: "Arc Lamps. (a) Must be provided with reliable stops to prevent carbons from falling out in case the clamps become loose. (b) All exposed parts must be carefully insulated from the circuit. (c) Must, for constant-current systems, be provided with an approved hand switch that will shunt the current around the carbons, should they fail to feed properly."

This ordinance was in force at the time of Briggs' death.

The trial court gave the general affirmative charge for the defendant, at its request.

Where an ordinance or by-law, assuming to exercise a power within the municipality's competency, is not void on its face, the legal presumption is that the ordinance or by-law is reasonable and valid until the contrary is shown by proper evidence.—*Bryan v. Mayor, etc.,* 154 Ala. 447, 452, 45 South. 922, 129 Am. St. Rep. 63; *Marion v. Chandler,* 6 Ala. 899, 902; *Johnson v. Town of Fayette,* 148 Ala. 497, 42 South. 621. When the unreasonableness vel non of an ordinance or by-law is asserted or urged, the question thus made is to be decided by the court, not the jury.—*Marion v. Chandler, supra; Johnson v. Town of Fayette, supra;* 2 McQuillin on Munc. Corp. § 729; 2 Dillon, § 599; *Evison v. Chicago R. R. Co.,* 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434. A qualification of this doctrine appears to have commended itself to the Supreme Court in *A. & W. Tel. Co. v. Philadelphia,* 190 U. S. 160, 166, 23 Sup. Ct. 817, 47 L. Ed. 995; but the conclusion, in this respect, of our cases, as well as the texts cited above, seem to us to afford the sounder, more practical rule, and will be adhered to. The court having the question to determine will take relevant evidence to advise its judgment upon the issue of unreasonableness vel non.—2 Dillon, § 599; *Marion v. Chandler, supra; Van Hook v. Selma,* 70 Ala. 361, 365, 45 Am. Rep. 85; 2 McQuillin, § 729. In order to justify the court in annulling an ordinance or by-law on the ground that it is unreasonable it must be "demonstrably shown" that it is unreasonable; "equipoise of opinion" on the matter will not warrant the setting aside of the ordinance or by-law on the ground of unreasonableness.— *Marion v. Chandler,* 6 Ala. 899, 902.

The manifest object of the subdivision (b) of the ordinance quoted before is to assure safety from the highly dangerous effect of electricity. The abstract power of the municipality to ordain in respect of care and safety as the quoted subdivision undertakes is not denied. Indeed, the power sought to be asserted thereby is of police, and the obvious purposes thereof forbid doubt of the municipal competency to so ordain, if the effort made does not bring the subdivision under the rule which requires the annulment of ordinances that are unreasonable.

It is clear from the terms of the subdivision (b) of the ordinance that all exposed parts of arc lamps should be insulated; and that "from the circuit." Upon testimony of qualified experts it is insisted for appelleee that, if that provision of the subdivision should be accepted as requiring insulation from any voltage that might be upon the wires carrying no current to an arc lamp, the result would be to exact the impossible; and hence the subdivision would be unreasonable and void. So from this premise it is urged that the subdivision should be interpreted as requiring insulation from the potential; that is, as we understand the testimony for defendant, an insulation that would suffice to "isolate" that degree of voltage required to operate the individual arc lamp of the series of arc lamps of which the arc lamp in question was a member. The arc lamp in question was of a series of 60 arc lamps employed in street lighting; and the voltage necessary to the use of the individual arc lamp was approximately 72 volts. The wires connecting the series were charged with a voltage equal to the multiple of the number of lamps in the series (60) and the voltage (72) required to operate each arc lamp of the series. This placed upon the wires a current of approximately 4,400 volts. The testimony is in conflict upon

the issue of the feasibility or practicability vel non of an insulation adequate and effective to confine that maximum voltage so as to isolate it from the exposed parts of the arc lamps of the series. The evidence on this issue has been carefully considered by the full bench. The court is of the opinion that the evidence is not sufficiently conclusive, under the rule before stated, to justify the court in affirming the defendant's premise that subdivision (b) of the ordinance was or is unreasonable in exacting insulation to isolate the current—not merely the potential—from the exposed parts of the arc lamps of the series to which the lamp in question belonged. The court, therefore, holds that the subdivision (b) under consideration required the insulation of exposed parts of arc lamps "from the circuit." This exaction of the subdivision was shown, by tendencies of the evidence at least, to have been violated; and, if violated, to have sustained the plaintiff's assertion of negligence on the part of the defendant.

Treating the appeal broadly, as, indeed, general affirmative charge given for defendant renders necessary, we are brought to the consideration of the inquiry whether intestate's death may be attributed for its legal, proximate cause to the negligence stated.

On the original review of the trial the view prevailed, and an opinion to that effect was delivered, that the tragic result and the circumstances leading to it were not so within the range of fairly and reasonably anticipatable events as to allow the visitation upon the defendant, for its assumed negligence in not observing the requirements of subdivision (b) of the ordinance, of responsibility for intestate's death.

Upon rehearing the full bench has carefully reviewed that conclusion; and the court, with the exception of our Brother MAYFIELD, are satisfied that error underlay the pronouncement previously made.

The accepted, established statement of the particular phase of the legal definition of proximate cause with which this appeal concerns us is thus set down in *Armstrong v. Montgomery Ry. Co.*, 123 Ala. 233, 249, 250, 26 South. 349, 354: "The logical rule in this connection, the rule of common sense and human experience as well (if indeed, there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which, in fact, existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind."

This statement is, in the main, the substance of the text to be found in 1 Sher. & Red. on Neg. § 29. It has been said by this court to accord with the pertinent affirmation of principle made in *Mutch's Case*, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179. The quoted announcement has been reaffirmed in these, among other, subsequent deliverances on the subject: *M. & O. R. R. Co. v. Christian Moerlein Brew. Co.*, 146 Ala. 404, 41 South. 17; *L. & N. R. R. Co. v. Quick*, 125 Ala. 553, 28 South. 14; *K. C., M. & B. R. R. Co. v. Foster*, 134 Ala. 244, 32 South. 773, Am. St. Rep. 25.

Unless the evidence bearing upon the question whether the defendant's negligence was the proximate cause of the injury complained of is entirely free from doubt or adverse influence, that question must be submitted to the jury for decision, under proper instructions by the court. —1 Sher. & Red, on Neg. § 55; 1 Cooley on Torts, p. 111; *Henry v. St. Louis Ry. Co.*, 76 Mo. 288, 43 Am. Rep. 762; *Ehrgott v. Mayor, etc.*, 96 N. Y. 264, 48 Am. Rep. 622;

*Milwaukee R. Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *E. T., V. & G. R. R. Co. v. Lockhart,* 79 Ala. 315; *A. G. S. R. R. Co. v. Arnold,* 80 Ala. 600, 605-606, 2 South. 337.

Whether the "consequences," upon which the claim for recovery is made, as for the negligence shown in the concrete case presented, were those "a prudent and experienced man, fully acquainted with all the circumstances, at the time of the negligent act, would have thought reasonably possible to follow, if they had occurred to his mind," is ordinarily, a question for the jury to determine in view of the accompanying circumstances.—*Ehrgott v. Mayor, etc., supra; Milwaukee R. Co. v. Kellogg, supra.* But where the damnifying result for which the plaintiff would be compensated or have penalized was beyond the range of any reasonable expectation of a reasonably prudent one assumed to have had the fullest knowledge of the circumstances, the court itself may pronounce against the defendant's liability.—1 Sher. & Red. on Neg. § 28. It should, however, be constantly borne in mind that there is no requirement, as a condition to liability, that the defendant, or those for whose negligence the defendant is responsible, should have anticipated the actual consequences that did, in fact, ensue.

In the opinion of Chief Justice ANDERSON, Justices SOMERVILLE, GARDNER, and the writer, casting the conclusion of the court, the neecssary result from the application of the principles stated before is: That the material inquiry whether the death of Briggs, under the circumstances shown by the evidence, was within the reasonably anticipatable consequences of the negligence committed by this defendant in failing to observe the mandate of subdivision (b) of the quoted ordinance should have been submitted to the jury for determination, under appropriate instructions from the court. Jus-

[Briggs v. Birmingham Railway, Light & Power Company.]

tices SAYRE and DE GRAFFENRIED are of the opinion that the death of Briggs was, as a matter of law, the proximate consequence of the negligence mentioned just above. Justice MAYFIELD is of the opinion that the death of Briggs was without the range of any rationally possible consequence of the negligence described, and hence that that negligence was not the proximate cause of Briggs death.

The court therefore erred in giving the affirmative charge for defendant.

Since Briggs, as well as his superiors in the paving company's service, had the right to assume, until advised to the contrary, that the rim of the arc lamp was not charged with electricity, that the current was insulated as subdivision (b) of the ordinance required, no contributory negligence or assumption of risk could be attributed to Briggs. The general doctrine is that every one may be presumed to act with due care and to observe the mandates of the law, including ordinances, and that there is no duty on one to anticipate another's culpable negligence.—1 Sher. & Red. on Neg. § 92; 29 Cyc. pp. 516, 517.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur in the opinion. SAYRE and DE GRAFFENRIED, JJ., concur in the conclusion as indicated in the opinion. MAYFIELD, J., dissents.