# Western Union Telegraph Company *v.* Jones.

*Action for Death by Electricity.*

(Decided November 7, 1914. 66 South. 691.)

1. *Electricity; Injury; Negligence; Pleading.*—Where a plaintiff's intestate was found dead, his body across a broken electric light wire, counts charging that the Western Union Telegraph Company, with knowledge or notice of the proximate location of the electric light wires, negligently constructed or maintained a guy wire attached to one of its poles in such dangerous proximity to one of the electric light wires that by a vibration of the wires from natural causes, the guy wire came in contact with and fused the light wire, causing it to fall and be down on the surface of the street, further charging that the light company maintained poles and lighting wires in line with those of the Western Union Telegraph Company, and that such telegraph company, with knowledge of these facts, negligently erected and maintained one of its poles in such close proximity to the light wire that the latter came in contact with and vibrated against one of defendant's poles, thereby causing the heavily charged light wire to break and fall to the earth, stated a good cause of action, and were not demurrable.

2. *Same; Contributory Negligence; Res Ipsa Loquitur.*—Where plantiff's intestate was found lying dead in a public street in a city, his body lying across a broken wire of an electric lighting company, the doctrine of res ipsa loquitur could not be applied as against him to raise a presumption of negligence in his coming in contact with the wire, or otherwise contributing to his own injury.

3. *Same; Negligence; Jury Question.*—The evidence examined and held not sufficient to require a submission to the jury as to the negligence of defendant telegraph company in maintaining its lines between heavily charged electric wires, or in maintaining a guy wire, but sufficient to require a submission to the jury of the question of the negligence of the telegraph company in knowingly maintaining one of its poles in such close proximity to one of the light wires, that such wires could come in contact with the pole by mere natural vibration, causing the light wire to break and fall into the street.

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

[Western Union Telegraph Company v. Jones.]

Action by Geraldine Jones, administratrix, against the Western Union Telegraph Company, for damages for the death of her intestate, by electrocution. Judgment for plaintiff and defendant appeals. Reversed and remanded.

FORNEY JOHNSTON, and COOPER & COOPER, for appellant.

VIRGIL BOULDIN, and DOUGLASS TAYLOR, for appellee.

MAYFIELD, J.—This is an action under the homicide statute (Code 1907, § 2486), and it seeks to recover damages of the defendant for negligently or wrongfully causing the death of plaintiff's intestate. There were no eye witnesses to the circumstances surrounding the death of intestate; he was dead when found at an early hour of the morning, in or near a public street or sidewalk in the city of Huntsville. His body, when found, was lying across a broken wire of the Huntsville Railway, Light & Power Company.

(1) There had been a severe electrical and wind storm in the city of Huntsville on the night preceding the finding of the body of deceased. This storm caused considerable disturbance of the electric wires of all the electric companies in the city of Huntsville, and some fires which had been started were attributed to the breaking or crossing of such wires, caused by this storm. As to this, the defendant interposed the defense that the accident was unavoidable, as being the act of God—the doctrine of vis major.

The case was tried on two counts. The negligence alleged in the first count was that: "The Huntsville Railway, Light & Power Company maintained poles and lighting wires substantially in line with those of defendants. Said lighting wires of the Huntsville Rail-

way, Light & Power Company were regularly charged with an electric current greatly dangerous to human life. The defendants, with knowledge or notice of these facts, negligently constructed or maintained one of their guy wires attached to one of their poles in such dangerous proximity to one of said heavily charged lighting wires that, by the vibration of said wires from natural causes, said guy wire came in contact with and fused said heavily charged lighting wires, causing it to fall and be down on the surface of said public street."

The negligence alleged in the second count was that: "The Huntsville Railway, Light & Power Company, maintained poles and lighting wires substantially in line with those of defendant. Said lighting wires of the Huntsville Railway, Light & Power Company were regularly charged with an electric current dangerous to human life. The defendant, with knowledge of these facts, did negligently erect or maintain one of its poles in such close proximity to one of said heavily charged lighting wires that said lighting wire came in touch or contact with and vibrated against said pole, thereby causing said heavily charged lighting wire to break and fall into said street."

It is seen that the only negligence relied upon was that the defendant telegraph company either so negligently constructed, or so negligently maintained its lines as to allow one of its guy wires or poles to be in such close proximity to a heavily charged and dangerous electric light wire of the Huntsville Railway, Light & Power Company that it came in contact therewith and fused said heavily and dangerously charged wire, thereby causing it to fall and to come in contact with intestate.

The defendant pleaded, in short, by consent, the general issue, unavoidable accident, contributory negli-

gence, and release and discharge. The court gave the affirmative charge for the plaintiff on the issues of contributory negligence and release and discharge, and submitted the case to the jury, with instructions as to the other issues. The trial resulted in verdict and judgment for the plaintiff in the sum of $2,424.60, and costs, from which judgment this appeal is prosecuted. Each count stated a good cause of action, and was not subject to the demurrer interposed. There was therefore, no error in overruling the demurrer to each.

(2) There was no evidence showing, or tending to show, negligence on the part of plaintiff's intestate, and it was not shown to be a case in which the doctrine of res ipsa loquitur could be applied against the intestate, to show negligence in coming in contact with the wire, or his otherwise contributing to his own death. The court therefore properly gave the affirmative charge for the plaintiff on this issue.

The proof also utterly failed to show any release or discharge of the defendant from liability in this, or in any other, action for the wrongful death of plaintiff's intestate. The release was expressly and carefully limited to the Railway, Light & Power Company, and it was even attempted to exclude any other person or corporation jointly liable with the railway company. Whether that could be done we need not decide, as there was no proof tending to show that this defendant and the railway company were jointly, and not severally, liable. If they were both liable, under all the evidence they were liable severally, and not jointly. Neither one of these two companies had any interest or concern in the discharge or release of the other from liability for the death of intestate. So there was no error in giving the affirmative charge for the plaintiff on this issue.

The real, serious, and close, question in the case is whether or not there was any evidence tending to prove

the particular negligence on the part of defendant alleged in .each or in either of the two counts. If this action were against the Railway, Light & Power Company, the doctrine of res ipsa loquitur would apply; or, if the wires of defendant had come in contact with the intestate, the doctrine would apply.—*Appleton's Case,* 171 Ala. 324, 54 South. 638, Ann. Cas. 1913A, 1181. If the negligence of the defendant in this case caused the injury complained of, it was in the construction or maintenance of its poles or wires too near to those of the electric light company, which broke and directly caused the injury; hence, the accident did not tend to speak the negligence of the telegraph company, but that of the electric light company whose wire broke and caused the injury; therefore this case is not brought within the rule declared in *Appleton's Case, supra.*

(3) The evidence shows that the Western poles were erected before those of the electric light company; that the poles of the two companies were practically on a line with each other, and that the wires of the electric light company were placed on either side of the tele-graph poles. The evidence shows, however, that the guy wire in question was erected after the erection of the electric wire. It was shown that this guy wire was anchored in the earth, on a line with the poles of the telegraph company and the electric light company, and was fastened at its other end to one of the telegraph poles—the pole in contact with which, it is alleged, the electric wire came. There was no evidence showing, or tending to show, any negligence in the construction or placing of the guy wire in question; but all of the evidence showed that it was a necessary part of the defendant's system, and that its purpose was to make the poles safe and secure, to prevent them from. falling, and to hold them in place and in line; and as it had

to be attached to the defendant's poles, and had to be on a line with the poles of both companies, it had, of necessity, to pass between the wires of the electric light company, they being placed on either side of the defendant's poles to which the wire was attached. It was shown by the plaintiff's own evidence (and there is none to the contrary) that this guy wire was not nearer than from four to six inches to the wires of the electric light company, and that it was not possible for it to be nearer than this to the wires of the electric company where they pass the poles of the defendant without breaking the wires. All the experts on the subject testify that the guy wire was properly located, and that it was not within dangerous proximity to the wires of the electric light company. There is no evidence that the heavily charged wire of the electric company ever came in contact with this guy wire until after the heavily charged wire was broken. In fact, there is no evidence to show that the two wires could probably have come in contact without the breaking of one of the wires. The plaintiff's own expert witnesses deny that the two wires were in contact, and they all fail to testify or intimate that the location or the maintenance of the guy wire was dangerous; but some of them—all who testified on the subject—said that the location of the guy wire with reference to the other wires was safe, and not dangerous.

One of the plaintiff's witnesses on this subject says: "I knew at the time that the Railway, Light & Power Company's wire touched that pole. The electric light wire was connected up. I knew that from time to time the wires of my company would touch the side of that telegraph pole. That telegraph pole was 50 or 60 feet in height. I think, when our wires would touch that pole, they would still be 4 or 6 inches away from the

guy wire. In my opinion as an electrician, I do not think that condition you have referred to was dangerous to the public and a menace. That was my judgment as an electrician, and my experience."

It was shown by all the experts who examined the location of the guy wire that they considered it safe, and not located close enough to come in contact with the light wires, even when they were vibrating.

We do not think there is evidence in this record sufficient to carry the case to the jury on the first count of the complaint, which ascribes negligence as for creating or maintaining the guy wire so close to the electric wire as to cause or allow the two to come in contact, and thereby fuse the electric light wire. We do not think that the evidence, nor any of its tendencies prove, or tend to prove, that there was any contact between these two wires such as to cause the injury complained of, or that they were maintained in such proximity as to fuse the electric light wire. The only evidence which showed, or tended to show, contact of the electric wire with other objects was that showing the contact of the wire with the pole itself, and not with the guy wire. And there was evidence, not contradicted, which showed that, if the two wires had come in contact, as alleged, both wires would have necessarily shown evidences thereof, in that the two metals, copper and iron, would have become fused into each other, thus forming an amalgamation, and that there was no such evidence as to either wire. So there was not only a total absence of evidence showing a contact of the two wires, but there was evidence showing that they did not come in contact, and that, if they had, and one had fused, there would have been unmistakable evidence thereof. The spot or speck on one of the wires did not show, or tend to show, such contact before the

one fell. For this reason, the trial court should have given the affirmative charge, as requested by the defendant, as to the first count.

It is contended by appellee that, as the jury viewed the scene of the accident, the court could not know what facts they found. Where the evidence is in conflict, or it is open for the jury to find either one of two ways, we will not review their finding where they personally inspected the scene or the instruments of the accident. A verdict cannot be supported, where all the evidence is against it, merely because the jury viewed in person the scene of the accident a year or more thereafter; they cannot make evidence nor change the undisputed facts. If appellee's contention were true, then the trial court erred in giving the affirmative charge as to contributory negligence.

There was evidence tending to show that the dangerous wire was in contact with one of the defendant's poles, and that, if the pole was very wet, it might, by this contact, fuse the wire and cause the injury complained of. So there was some evidence to support the second count, and the court properly refused the defendant's requested affirmative instruction as to this count.

The other special requested charges were each either bad, or substantially duplicated in charges given at the request of the defendant.

For the error in refusing the general affirmative charge as to the first count, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.