183 So. 665

## ALABAMA POWER CO. v. PIERRE et al.

### I Div. 2.

Supreme Court of Alabama.

Oct. 6, 1938.

Inge & Stallworth, of Mobile and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

Gordon, Edington, Leighs & Gordon, of Mobile, for appellees.

GARDNER, Justice.

W. A. Pierre and wife jointly owned a residence lot on Mobile Bay, upon which they erected a dwelling house, and purchased from the Alabama Power Company certain electrical fixtures. This house was destroyed by fire when practically completed, and the Pierres brought this suit against the Power Company for damages thus suffered, charging that the loss of the house was caused by the negligence of the company's employees while doing work in connection with the installation of some of the fixtures.

At the threshold of the case is the insistence that the defendant was due the affirmative charge upon the theory that at best the evidence as to the cause of the fire was so uncertain, speculative and conjectural as to be insufficient upon which to rest the jury's verdict.

 We gave application to the principle in the recent case of Georgia Power Co. v. Edmunds, 233 Ala. 273, 171 So. 256, where is cited Southern Railway Co. v. Dickson, 211 Ala. 481, 100 So. 665. From the opinion in the latter case the following excerpt was set out, and is here repeated as containing appropriate illustrative principles:

" 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence." [100 So. page 669.]

The application of the stated doctrine is of course to be determined upon the peculiar facts in each particular case.

 And considered in the light of the evidence adduced upon the hearing we are persuaded a jury question was presented. No detail statement of the proof is necessary, and we consider a general summary will suffice.

The plumbers were at work in the kitchen as late as 6:35 P. M. The earliest hour of the discovery of the fire was 8:30 P. M. by a neighbor who states the fire was in the kitchen, which is located in the northwest corner of the house, and that flames were then of such intensity as to have melted the window panes, and was protruding through the window. The window of the kitchen had been pulled down and the door closed. The plumbers were using a blowtorch which emitted flames some eight or ten inches in length, and were also using matches, both in the kitchen and under it where there was inflammable material. The blowtorch was used under the kitchen and matches struck under it, and the plumbers warned of the danger in such use. They admitted that a flashlight should have been used, and that the method followed was improper, but the flashlight had been forgotten. Others working at the house insisted they struck no matches, and did no smoking in the kitchen. While some time elapsed between the hour of departure of the plumbers and the discovery of the fire then in full force, yet Pierre, the owner, and the plumbers left about the same time, and no one saw any indication of fire as they were leaving.

The kitchen was left closed, and the jury could reasonably infer that even a spark might have been left smoldering in the kitchen or under it for some time before it would break into a flame.

There was proof tending to show negligent handling of the blowtorch in the kitchen. The neighbor who discovered the fire states that it was confined entirely to the kitchen and the flames were then flowing out of the window two or three feet.

True, there is no positive proof as to the cause of the fire, and many different causes may be imagined. But where, as here, the evidence points to one theory of causation, indicating a logical sequence of cause and effect, there is a juridical basis for such determination, notwithstanding the existence of other plausible theories, whether with or without support in the evidence.

In the instant case we are of the opinion a reasonable inference is deducible from the evidence that the fire did in fact originate from the careless manner in which the plumbers used the torchlight and struck matches underneath the kitchen, and that, therefore, it cannot be said the evidence is without "selective application" as to plausible explanation of its origin. The affirmative charge requested upon the contrary theory was of consequence properly refused.

Defendant insists, however, that if the correctness of the foregoing conclusion be conceded, yet there is no liability, as the plumbers were in the employ of one Bailey

who was, as to this defendant, an independent contractor, and of consequence defendant had no supervision over the work then being done, citing General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710, noted in the more recent cases of Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74, Greenwald v. Russell, 233 Ala. 502, 172 So. 895, and Wade v. Brisker, 233 Ala. 585, 173 So. 64.

■■ It is, of course, the well settled general rule that one is not ordinarily responsible for the negligent conduct of his independent contractor. But the rule has exceptions, one of which is that a person is responsible for the manner of performance of his non-delegable duties, though done by an independent contractor. This exception was here given recognition in Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23, and Alabama Power Co. v. Emens, 228 Ala. 466, 153 So. 729.

Plaintiffs' proof tended to show that, in the purchase of electrical equipment for their residence for a fixed sum, it was an inducement to close the trade and make the purchase from defendant, that defendant, a responsible and solvent concern, agreed to install the same in the house without cost to these plaintiffs. They had no knowledge of, nor were they interested in, the arrangement made by defendant with Bailey, but only knew the plumbers were on the premises doing the work of installation, pursuant to defendant's agreement with them.

■ In the Anderson Case, supra, after stating the rule of responsibility for the manner of performance of his non-delegable duties, though done by an independent contractor, it was further observed "that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor." [page 24.]

And the Anderson Case, supra, is authority also for the conclusion that in such a situation the "defendant is liable to plaintiff as though the contractor were the servant or agent of defendant."

■ Under plaintiffs' evidence, therefore, in the light of this authority, defendant cannot escape responsibility for the negligent performance of the installation upon the theory that Bailey was an independent contractor. By contract this installation was a non-delegable duty on de-

fendant's part so far as these plaintiffs were concerned, and the contractor may be treated in law as the agent or servant of defendant, though as between the parties and in a strict legal sense such relationship did not in fact exist.

The argument is further advanced that the plumbers in using the blowtorch and matches did a wholly unnecessary and collateral act, for which no liability could be fastened on defendant, upon the authority of Chattahoochee & Gulf R. Co. v. Behrman, 136 Ala. 508, 35 So. 132, and Massey v. Oates, 143 Ala. 248, 39 So. 142. But we think these cases are so readily distinguishable and inapplicable to the present case as to require no detail discussion.

The plumbers here were engaged in the installation agreed upon by defendant with plaintiffs, and the proof tends to show a negligent performance of that work—that and nothing more. We consider further discussion of this phase of the case unnecessary, except to add that in view of the fact that in law the contractor may be in a sense deemed the servant or agent of defendant, no variance appears as between the averment of the complaint and the proof in this respect.

■ Like reasoning renders the reference on cross-examination of the witness Roland (assignments of error 5 and 34) to the workmen in the kitchen as "the plumbers of the Alabama Power Company" entirely harmless. So they may be considered, in a legal sense, under the plaintiffs' proof, in so far as the question of legal responsibility is concerned,—though in fact they were sent by Bailey pursuant to his contract with defendant company.

Mr. Pierre testified there was a complete oral agreement made with defendant's agent for the purchase of the equipment wherein, as an inducement, defendant agreed to install the same in his residence free of cost. This is not denied, and in fact undisputedly the plumbers at work the evening of the fire were there pursuant to such understanding. Mrs. Pierre had done much of the inspection of the equipment. It appears from the proof that, after this explicit oral agreement, Mrs. Pierre, sitting in the car, signed a conditional sale contract wherein were the words: "Purchaser agrees that installation of above merchandise shall include only necessary work to connect same with purchaser's wiring system, which seller shall have no duty to maintain." Thereupon defendant moved

to exclude the evidence of Mr. Pierre concerning the oral agreement, above indicated, upon the theory that its admission would violate the rule against parol evidence varying or contradicting a written contract. Defendant cites Navco Hardwood Co. v. Mobile & Gulf Navigation Co., 214 Ala. 176, 106 So. 862; Griffin v. Tatum Chevrolet Co., 231 Ala. 534, 166 So. 49.

■ Of course a collateral parol agreement concerning the same subject matter of the writing may be shown if it does not vary or contradict the writing. Bell, Rogers & Zemurray Bros. v. Jenkins, 221 Ala. 652, 130 So. 396; James v. Cortright, 220 Ala. 578, 126 So. 631.

The work of the plumbers was necessary and must precede the wiring, and it would seem the language of the contract quoted above was primarily intended to guard against any duty of the seller to maintain the same following installation, rather than guard against any obligation to do any necessary work preliminary to the actual wiring. At any rate, there is room for argument that the writing was ambiguous and subject to parol explanation. 22 Corpus Juris 1192 et seq.

■ But that question aside and undetermined, we think the parol agreement admissible upon the theory that it clearly appears the parties never intended that the written conditional sale contract should express their full agreement. When Mrs. Pierre signed the agreement she asked if Mr. Pierre should also sign, and the agent told her it was unnecessary, and she alone signed. And when she suggested that she read it, the agent replied, "You don't have to read it—there is nothing in there to catch you. It is just an ordinary contract that anybody buying merchandise on time must sign," and thereupon she signed.

■ As said by Mr. Williston in his work on Contracts, volume 3, section 633: "The parol evidence rule does not apply to every contract of which there is written evidence, but only applies when the parties to an agreement reduce it to writing, and agree or intend that the writing shall be their agreement."

Mrs. Pierre and Mr. Pierre both testify to the agreement to install free of cost. The purchase was made jointly and they jointly owned the property. The agreement was made with both of them, though her signature alone was required, and all the proof tends to show that the conditional sale contract was intended more as a matter of form and not as expressive of the agreement of the parties in relation to the purchase and the matter of installation. Mrs. Pierre trusted the statement of the agent that there was "no catch" in the contract and no necessity for her to read it, and acted upon such representation in signing it without reading.

■ If the sales contract is to be interpreted as defendant insists, considering this parol proof, there was a "catch" in it, and Mrs. Pierre deceived thereby,—thus constituting a fraud impairing its validity. This may be shown by parol. 3 Williston on Contracts, section 634; Bristow v. Jones, 1 Ala. 159; 22 Corpus Juris 1215.

We think it clear enough the conditional sale contract was never intended by the parties as expressing the full agreement concerning the purchase and installation of the equipment, and that the parol proof was properly permitted to remain in evidence.

■ Without stopping to inquire as to the correctness of refused charges 24 and 27 (assignments of error 15 and 16), we think their substance sufficiently embraced in charges 21 and 28, given for the defendant.

What has heretofore been said in this opinion concerning the governing legal principles suffices, without further elaboration, to show the refusal of other requested charges constitutes no error to reverse, and they need no separate treatment.

A jury question was presented, and we do not consider that the case is one which calls for disturbance here of the action of the court in denying the motion for a new trial. No reversible error appearing, the judgment will stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.