844 So.2d 1196 (2002)
GONZALEZ, LLC
v.
Roy DiVINCENTI and Professional Forensic Services, Inc.
Roy DiVincenti and Professional Forensic Services, Inc.
v.
Gonzalez, LLC.
1010015 and 1011011.
Supreme Court of Alabama.
September 13, 2002.
*1197 David F. Daniell of Daniell, Upton, Perry & Morris, P.C., Mobile, for appellant/cross-appellee Gonzalez, LLC.
Mark E. Spear and John M. Hunter of Richardson, Spear & Spear, P.C., Mobile, for appellee/cross-appellants Roy DiVincenti and Professional Forensic Services, Inc.
SEE, Justice.
Gonzalez, LLC, owns the former Scottish Rite Temple in Mobile County. After the Temple allegedly suffered damage in 1997 from Hurricane Danny, Gonzalez, LLC, filed a claim with TIG Insurance Company and K & K Insurance Group under its insurance policy, which provided coverage for wind and hurricane damage. Gonzalez, LLC, claims that its insurance agent, Mark Rowley, repeatedly assured it that its claim would be paid. In 1998, while Gonzalez, LLC, was waiting for payment on the claims resulting from damage caused by Hurricane Danny, Hurricane Georges made landfall, allegedly causing more damage to the Temple. Gonzalez, LLC, filed a claim for the damage caused by Hurricane Georges, and this claim was promptly denied. After Gonzalez, LLC, discovered that payment was not forthcoming on its claims for the damage from Hurricane Danny and after the claim for *1198 the damage from Hurricane Georges had been denied, Gonzalez, LLC, in 1999 sued its insurance agent, Mark Rowley; its insurance agency, Oakleigh Insurance Agency; its insurance providers, K & K Insurance Group and TIG Insurance Company; several fictitiously named parties; and the agents or representatives of all the defendants. Gonzalez, LLC, alleged negligent failure to report a claim; wanton failure to report a claim; fraud in misrepresenting that the hurricane-damage claim would be paid; breach of contract for failure to investigate, handle, or pay the covered loss; negligent failure to supervise agents and representatives; and bad faith in failing to investigate and refusing to pay claims.
After Gonzalez, LLC, filed this action, the defendants hired Professional Forensic Services, Inc. ("PFS"), and its president, Roy DiVincenti, to perform forensic testing on the roof of the Temple to determine what damage, if any, had been done by wind and rain. Before PFS began testing, Scott Gonzalez, the president of Gonzalez, LLC, signed a release purporting to release PFS from liability for any damage done to the roof during testing.
The liability release stated:
"In consideration of TIG Insurance Company, K & K Insurance Group, Badger-Stonewall Insurance Agency[1] and Mark Rowley (hereinafter known as Releasees) bearing responsibility for professional services compensation for forensic engineering investigation and testing performed by Professional Forensic Services, Inc. (hereinafter, `PFS') on the Scottish Rite Temple (hereinafter `Property') with respect to reported claims of wind damage and water intrusion to the Property, the undersigned, Scott Gonzalez, Gonzalez, LLC, and Scottish Rite Temple, hereby fully releases both Releasees and PFS from any damages or liability with respect to water intrusion and/or inability to exactly match paint colors and/or aesthetic finish textures, or exposure/releasing of environmental contaminants (NOTE: work will cease immediately, should this occur) associated with the work scope to be performed on the Property by PFS in the sampling of claim-pertinent materials from the Property. Releasors agree to said release based on the understanding that the repairs will be performed by a qualified licensed General Contractor and that every attempt will be made to match the present exterior colors and surface-visible sampling materials from the `sampling' locations. Releasors fully release both Releasees and PFS from any damage or liability with respect to any leaks that may arise on the Property as a result of the roof material sampling. Releasors agree to said release based on the understanding that a roofing contractor, licensed to practice in the State of Alabama, will perform the repairs for the sampled locations on the roof. Releasees and PFS agree to contact the Releasors or Releasors' attorney prior to taking any sample of any claim pertinent material to allow the photographing and cataloging of any such sample. Releasees and PFS also agree to provide a portion of any sample taken to Releasors or Releasors' attorney."
After Scott Gonzalez agreed to the terms of the release, PFS tested the roof of the Temple. This testing included inserting numerous nails into the roof at regular intervals. Gonzalez, LLC, claims that inserting the nails into the roof pierced the water barrier in the roof, permitting *1199 additional water damage to the roof and the building. Gonzalez, LLC, claims that the additional damage requires that the roof be replaced. PFS, on the other hand, claims that the nails used in testing were pushed in with the inspectors' thumbs or were "lightly tapped" in with a hammer and that they were not long enough to pierce the water barrier in the roof.[2]
After PFS completed its testing, Gonzalez, LLC, filed an amended complaint, alleging the claims set out above, and including the following allegation:
"14. Suit was filed on July 28, 1999. After filing of suit, TIG, A, B, C, Rowley, K & K, D, E, F and/or G, began an investigation of the Plaintiff's loss. In June of 2000, during this investigation, TIG, A, B, C, K & K, D, E, F, and/or G, negligently damaged the roof of the Temple, by driving nails through its surface, necessitating extensive repair, for which it has refused to pay."
After filing this amended complaint, Gonzalez, LLC, agreed to settle the action. The parties signed two different releases, the first dated October 9, 2000; that release read, in part:
"For, and in consideration of the sum of One Hundred Sixty Thousand and no/100 Dollars ... We, Scott Gonzalez, Siobhan Gonzalez [Scott's wife], and Gonzalez, LLC, of Mobile, Alabama (THE RELEASING PARTIES), do hereby RELEASE AND FOREVER DISCHARGE Mark Rowley, Mark Rowley d/b/a Oakleigh Insurance Agency, Oakleigh Insurance Agency, Inc., and all of their employees and agents, from all claims, liability, and losses, whether heretofore or now existing, or hereafter accruing and/or occurring, arising out of or related, directly, or indirectly, in whole or in part, to the following subject matter:
"The policy of insurance issued by TIG Insurance Company, through Mark Rowley, on or about March 25, 1997, wherein Scott Gonzalez and Siobhan Gonzalez are listed as the Named Insureds; any and all claims for proceeds and/or benefits claimed to have accrued to or for the benefit of the RELEASING PARTIES, or any of them, ... including, but not limited to all events and circumstances related to the purchase of such insurance and/or the presentation of claims for benefits and/or coverage under said insurance as a result of Hurricane Danny and Hurricane Georges in July 1997 and September 1998, respectively, in Mobile County, Alabama, resulting in damage to the Scottish Rite Temple.... The Subject Matter of this Release also includes all claims and issues raised, or which could be raised, in that civil action ... styled Scottish Rite Temple, Scott Gonzalez, Siobhan Gonzalez, and Gonzalez, L.L.C., Plaintiffs v. Badger-Stonewall Insurance Agency, Inc., et al., Defendants."
The second release of claims, signed by the parties on October 25, 2000, stated, in pertinent part:
"This agreement is intended to effect the extinguishment of all obligations hereafter designated against all parties who were or could have been sued by Plaintiffs, arising from Plaintiffs' ownership of the Scottish Rite Temple (`Temple') and/or arising from any damage resulting to the Temple from any event whatsoever, whether weather related or non-weather related.

*1200 "....
"Whereas, after such mediation and settlement efforts, Plaintiffs agreed to dismiss their claims with prejudice as to TIG Insurance Co. and K & K Insurance Group and to release all claims and all potential claims against TIG Insurance Co. and K & K Insurance Group and any other individual or entity affiliated with them and their related business entities, their employees, their officers, their attorneys, and their agents;
"2. TIG Insurance Co. and K & K Insurance Group will pay collectively a total sum of $840,000 to [attorneys for Gonzalez, LLC]....
"....
"11. Reservation of Claim: Notwithstanding any other provision or agreement in this Final Release and Indemnity Agreement, Plaintiffs do not release any claim that they might have against Roy DiVincenti arising solely from Mr. DiVincenti's alleged actions in placing nails in the roof of the Temple."
After the settlement of the original action for a combined total payment of $1 million, Gonzalez, LLC, filed the present action against DiVincenti and PFS. After an amendment, the complaint alleged that DiVincenti, as an individual, and PFS were liable under theories of negligence, breach of contract, and misrepresentation or suppression for damages resulting from PFS's inspection of the Temple's roof. DiVincenti and PFS moved for the payment of attorney fees under the Alabama Litigation Accountability Act, Ala.Code 1975, § 12-19-270 et seq. They later moved for a summary judgment as to all claims against them under the doctrines of res judicata and collateral estoppel. The trial court granted the motion for a summary judgment on August 24, 2001; it did not certify this order as a final judgment under Rule 54(b), Ala. R. Civ. P.
On September 5, 2001, the trial court noted in the case-action log that it was aware that it had not ruled on the motion for attorney fees, and that it thought that reasonable attorney fees were warranted in this case. It, therefore, assigned the previously appointed mediator in the case to determine DiVincenti and PFS's attorney fees. On September 19, 2001, Gonzalez, LLC, filed a notice of an appeal from the summary judgment, arguing that the trial court erred in entering the summary judgment because, it argues, the doctrines of res judicata and collateral estoppel do not apply in this case. On September 20, 2001, the mediator filed a report regarding the attorney fees. On September 21, 2001, Gonzalez, LLC, requested a hearing on the attorney-fee issue, and DiVincenti and PFS filed a response to the request for an evidentiary hearing. No hearing took place, apparently because Gonzalez, LLC, had filed the notice of appeal in this case.
On February 1, 2002, several months after Gonzalez, LLC, filed its notice of appeal (case no. 1010015), the trial court denied DiVincenti and PFS's motion for attorney fees. DiVincenti and PFS then appealed from the order denying their motion (case no. 1011011). The issue whether the trial court retained jurisdiction to rule on the motion for attorney fees was presented in the first appeal. The parties thus had already fully addressed the issue of attorney fees in their briefs to this Court in case no. 1010015; that issue is fully addressed in this opinion. We, therefore, dismiss the appeal in case no. 1011011.
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our *1201 review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990)."
Brewer v. Woodall, 608 So.2d 370, 372 (Ala.1992).
DiVincenti and PFS, as a threshold issue, move to dismiss this appeal as being from a nonfinal order. They contend that because the motion for attorney fees was made before the motion for a summary judgment, because the trial court's summary judgment was not certified as a final order under Rule 54(b), Ala. R. Civ. P., and because the trial court noted that it had not yet ruled on the motion for attorney fees and had taken steps to do so before the notice of appeal was filed, the trial court retained jurisdiction of the case so that it could rule on the motion for attorney fees. Therefore, they argue, the appeal by Gonzalez, LLC, was an appeal from a nonfinal order and thus should be dismissed. See Rule 54(b), Ala. R. Civ. P.
This Court has attempted to clarify the steps a trial court must take to retain jurisdiction of a case to determine an award of attorney fees. In Meek v. Diversified Products Corp., 575 So.2d 1100 (Ala. 1991), this Court held that the trial court did retain jurisdiction to determine an award of attorney fees, stating:
"The trial court specifically granted Diversified's request [made during a hearing on a summary-judgment motion] to file a written motion and brief. This reserved the court's jurisdiction of Diversified's motion and gave ample notice to the plaintiff and his attorney.
"The specific language of the Alabama Litigation Accountability Act, consistent with its intent, provides for the trial court to consider the outcome of the proceedings in determining whether a party's action was without substantial justification. § 12-19-273(7). The holding of a separate hearing on the motion for an award of attorney fees after the entry of the summary judgment was a proper exercise of discretion by the trial court."
575 So.2d at 1103. However, other cases have clarified that to retain jurisdiction the court must specifically reserve its continuing jurisdiction.
"When plain language is used in a statute, it must be interpreted to mean exactly what it says. Ex parte Madison County, 406 So.2d 398 (Ala.1981). The plain language of § 12-19-270 states that the court must make its award of attorney's fees under the [Alabama Litigation Accountability] Act as part of its judgment on the merits of the case, `in addition' to other costs assessed against a frivolous litigant. The statute does not create a new or separate cause of action to be brought after a case is litigated and given a final adjudication on its merits; rather, it indicates that the motion must be made during the pendency of the case.
"....
"As interpreted by the supreme court, the ALAA [Alabama Litigation Accountability Act] provides for the trial court to consider the outcome of the proceedings in determining whether a party's action was without substantial justification. For this reason, it is within the court's discretion to hold a separate hearing on an ALAA petition after the entry of final judgment on the merits, provided that the court retained jurisdiction to do so. Meek [v. Diversified Prods. Corp., 575 So.2d 1100 (Ala. 1991)]. Otherwise, a final judgment puts *1202 an end to all controversies litigated or which ought to have been litigated within the particular controversy. Vacalis v. [Lowry], 279 Ala. 264, 184 So.2d 345 (1966)."
Baker v. Williams Bros., 601 So.2d 110, 112 (Ala.Civ.App.1992). Jurisdiction to award attorney fees was deemed not to have been reserved in Donnell Trucking Co. v. Shows, 659 So.2d 667, 669 (Ala.Civ. App.1995). In that case, the Court of Civil Appeals stated:
"In the present case the motions for attorney fees were pending at the time that the trial court issued its orders of June 16, 1993. This court would note that neither of these orders contained a ruling on the pending motions for attorney fees and that the trial court failed to retain jurisdiction to consider the motions at a later date....
"While Donnell's argument that it did everything that it could to have the matter heard can be appreciated, it is not persuasive. Since the [Alabama Litigation Accountability] Act provides that the trial court shall award the attorney fees as a part of its judgment, it was incumbent upon Donnell to have the trial court either rule on the pending motion for attorney fees when it granted its motion for summary judgment or reserve jurisdiction to hear the motion for attorney fees at a later date.
"In light of the above, we cannot say that, under the facts of this case, the trial court retained jurisdiction to hold a separate hearing on the motion for attorney fees after the entry of a final judgment. Consequently, we find that the trial court did not have jurisdiction to hear the motion for attorney fees."
This case is more like Donnell than it is like Meek or Baker. The motion for attorney fees was pending when the trial court entered the summary judgment, and, when the trial court entered the summary judgment, it made no mention of reserving jurisdiction for a determination of attorney fees. Moreover, DiVincenti and PFS did not ask the trial court to reserve jurisdiction to consider an attorney-fee award. We, therefore, conclude that the summary-judgment order was a final disposition of this case, and that the order Gonzalez, LLC, appeals from is a final order.
On appeal, Gonzalez, LLC, relies on its reservation of claim included in the release signed by the parties on October 25, 2000. This reservation of claim at most might reserve a claim against DiVincenti, not against PFS. See Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 91 (Ala.1985), citing Nero v. Chastang, 358 So.2d 740 (Ala.Civ.App. 1978), for the proposition that "a valid compromise agreement is conclusive only as to those matters which the parties fairly intended to include within its terms, and settlement is effective except as to those elements of the claim specifically reserved." Even if this reservation is effective, Gonzalez, LLC, has reserved no claim against PFS, because it made no specific reservation of claim against PFS when it released the various parties from the previous lawsuit.
DiVincenti and PFS argued before the trial court, and now argue to this Court, that the doctrine of res judicata, or claim preclusion, bars the attempt by Gonzalez, LLC, to relitigate the claims that, they allege, have already been decided in the settlement of the original action. They argue that because Gonzalez, LLC, chose to amend its complaint in its action against Rowley, Oakleigh, TIG, K & K, and other fictitiously named parties to include an allegation that TIG, K & K, and the fictitiously named parties negligently damaged the roof of the Temple by causing nails to *1203 be inserted in the roof, the negligence alleged against DiVincenti and PFS has already been addressed on the merits through the settlement and the dismissal with prejudice of all claims in the original action. DiVincenti and PFS argue that after 1) a prior judgment on the merits, 2) rendered by a court of competent jurisdiction, 3) with substantial identity of parties, and 4) with the same cause of action presented, the doctrine of res judicata does not permit a later action asserting the same claims. See Hughes v. Allenstein, 514 So.2d 858 (Ala.1987), and Dairyland Ins. Co. v. Jackson, 566 So.2d 723 (Ala. 1990). "Where these elements are present, the former suit bars any later suit on the same cause of action, including issues that were or could have been litigated in the prior case." Lott v. Toomey, 477 So.2d 316, 319 (Ala.1985).
"[T]his Court has ... held that a dismissal with prejudice is an adjudication on the merits. [Smith v. Union Bank & Trust Co., 653 So.2d 933 (Ala.1995)]; Hammermill Paper Co. v. Montreal Boyette Sandlin Day, 336 So.2d 166 (Ala. 1976)." Parmater v. Amcord, Inc., 699 So.2d 1238, 1241 (Ala.1997). DiVincenti and PFS therefore fulfill the first of the four elements of res judicata, that is, there has been a prior judgment on the merits. Gonzalez, LLC, does not allege that the trial court was not a court of competent jurisdiction; therefore, the second element of res judicatathat the judgment on the merits was rendered by a court of competent jurisdictionhas also been fulfilled.
The third element of res judicata is the substantial identity of parties.
"`"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies. Res judicata applies where the parties to both suits are `substantially identical.'
"`"Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the original suit. A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Moreover, if a party has a `sufficient "laboring oar" in the conduct' of the litigation, then the principle of res judicata can be actuated."'"
Green v. Wedowee Hosp., 584 So.2d 1309, 1315 (1991), quoting Whisman v. Alabama Power Co., 512 So.2d 78, 82-83 (Ala.1987), quoting in turn Century 21 Preferred Props., Inc. v. Alabama Real Estate Comm'n, 401 So.2d 764, 770 (Ala.1981).
In this case, Gonzalez, LLC, did not specifically name DiVincenti and PFS as parties in the original action; they were, however, contractors hired by the parties named in that action. TIG, a defendant in the original action, hired DiVincenti and PFS to investigate the claims made by Gonzalez, LLC. Then, following the inspection by DiVincenti and PFS, Gonzalez, LLC, amended its complaint to include a claim against Rowley, Oakleigh, TIG, K & K, and fictitiously named parties for damages for that inspection work. TIG, K & K, and the other named parties had to defend the inspection work of their contractor, and the interests of DiVincenti and PFS were adequately represented in the original case. DiVincenti and PFS are, therefore, substantially identical parties to those named in the amended complaint.
This Court does distinguish between agents and independent contractors in determining liability, holding, in general, that parties are liable for the actions of agents, but are not liable for the actions of *1204 independent contractors. Campbell v. Employers Ins. Co., 521 So.2d 924 (Ala. 1988). Here, however, the parties have contracted to create a nondelegable duty. General Fin. Corp. v. Smith, 505 So.2d 1045 (Ala.1987). This Court discussed nondelegable duties and the liability that arises from them in Fuller v. Tractor & Equipment Co., 545 So.2d 757 (Ala.1989):
"The fact situation in the present case is similar to that in Alabama Power Co. v. Pierre, [236 Ala. 521, 183 So. 665 (1938) ].
"In Pierre, the Pierres purchased electrical fixtures for their new home from Alabama Power Company. As an inducement to close the deal, Alabama Power agreed to install the fixtures at no charge. Alabama Power contracted with a third party to complete the actual installation; during the installation the subcontractors inadvertently set the house on fire. The Pierres sued Alabama Power, alleging that the installation of the fixtures was a non-delegable duty. This Court agreed and, citing the case of Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23 (1931), stated:
"`In the Anderson Case, supra, after stating the rule of responsibility for the manner of performance of his non-delegable duties, though done by an independent contractor, it was further observed "that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor."
"`And the Anderson Case, supra, is authority also for the conclusion that in such a situation the "defendant is liable to plaintiff as though the contractor were the servant or agent of defendant."
"`Under plaintiffs' evidence, therefore, in the light of this authority, defendant cannot escape responsibility for the negligent performance of the installation upon the theory that Bailey was an independent contractor. By contract this installation was a non-delegable duty on defendant's part so far as these plaintiffs were concerned, and the contractor may be treated in law as the agent or servant of defendant, though as between the parties and in a strict legal sense such relationship did not in fact exist.'
"236 Ala. at 525, 183 So. at 668."
545 So.2d at 759.[3]
Here, the parties named in the original action contractually obligated themselves to Gonzalez, LLC, for repair of any damage to the roof caused by PFS's inspection and sampling. This contract created a nondelegable duty on the part of the named parties to repair the roof damage caused by the inspection. Gonzalez, LLC, implicitly recognized the nondelegable nature of this duty when it amended its complaint against the named parties to include a claim against them for the roof damage caused by the inspection. Having contractually created a nondelegable duty on the part of the named parties and having sought and received damages from the named parties for their failure to fulfill this nondelegable duty, Gonzalez, LLC, *1205 cannot now recover a second time for the same injuryonce from the named parties in the original action and a second time from DiVincenti and PFS, the contractors hired to perform the nondelegable duty. Therefore, DiVincenti and PFS are substantially identical parties to the named parties in the first action.
"The fourth requirement of res judicata is that each suit be based on the same cause of action. The question is whether the same evidence substantially supports both actions. Geer Brothers, Inc. v. Crump, 349 So.2d 577 (Ala.1977)." Hughes v. Martin, 533 So.2d 188, 191 (Ala. 1988). The evidence that Gonzalez, LLC, would have used to show that TIG, K & K, Rowley, or Oakleigh was liable to Gonzalez, LLC, for damage to the roof is the same evidence that Gonzalez, LLC, would now use against DiVincenti and PFS. The fourth element of res judicata is therefore fulfilled.
The trial court based its summary judgment for DiVincenti and PFS on the doctrines of res judicata and collateral estoppel. After a de novo review, we find that the doctrine of res judicata applies in this case, so we need not consider whether the doctrine of collateral estoppel also applies. We therefore affirm the trial court's summary judgment.
1010015AFFIRMED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part, concurs in the result in part, and dissents in part.
1011011DISMISSED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, Justice (concurring in part, concurring in the result in part, and dissenting in part).
I concur in the holding that the trial court did not retain jurisdiction to award attorney fees pursuant to the Alabama Litigation Accountability Act. I concur only in the result of affirming the summary judgment in favor of Professional Forensic Services, Inc. ("PFS"). I respectfully dissent from affirming the summary judgment in favor of Roy DiVincenti.
If the facts stated in the main opinion were correct, its rationale applying the doctrine of res judicata to bar the claims against PFS and DiVincenti would be correct. More specifically, if the defendants in the first lawsuit had contractually undertaken a nondelegable duty to the plaintiff to perform the testing so as not to cause more leaks, then (1) the plaintiff could legally have pursued a claim against the defendants in the first lawsuit for leaks caused by PFS or DiVincenti, (2) the first-suit defendants would necessarily have defended the performance of the testing by PFS and DiVincenti, (3) the first-suit defendants would therefore have constituted the "laboring oar" and the privies of PFS and DiVincenti, (4) the plaintiff's settlement proceeds from the first lawsuit would have constituted its recovery for leaks caused by PFS and DiVincenti, and (5) therefore the settlement of the first lawsuit would have constituted a res judicata bar to the second lawsuit, the one now before us against PFS and DiVincenti for their causing the additional leaks in the course of their performance of their testing. See Green v. Wedowee Hospital, 584 So.2d 1309, 1315 (Ala.1991), cited and quoted in the main opinion.
The record, however, is devoid of evidence that the defendants to the first lawsuit *1206 ever contractually undertook a nondelegable duty to perform the testing so as not to cause more leaks. Such a contract does not exist.
The plaintiff's allegations against the defendants in the first lawsuit do not constitute evidence of the facts alleged or the facts essential to any theory that could have been alleged. This Court should avoid any holding that implies that allegations are self-proving. Therefore, the plaintiff's first lawsuit does not establish the existence of any such contract.
PFS and DiVincenti argue that the plaintiff's release of the first-suit defendants from liability for any leaks that might be caused in the anticipated testing by PFS and DiVincenti constitutes the contract by the first-suit defendants undertaking a nondelegable duty to the plaintiff to perform the testing without causing more leaks! The text of the release belies this argument, which defies the very concept of release. The release, which is quoted at the beginning of the main opinion, is quoted again here:
"In consideration of TIG Insurance Company, K & K Insurance Group, Badger-Stonewall Insurance Agency and Mark Rowley (hereinafter known as Releasees) bearing responsibility for professional services compensation for forensic engineering investigation and testing performed by Professional Forensic Services, Inc. (hereinafter, `PFS') on the Scottish Rite Temple (hereinafter `Property') with respect to reported claims of wind damage and water intrusion to the Property, the undersigned, Scott Gonzalez, Gonzalez, LLC, and Scottish Rite Temple, hereby fully releases both Releasees and PFS from any damages or liability with respect to water intrusion and/or inability to exactly match paint colors and/or aesthetic finish textures, or exposure/releasing of environmental contaminants (NOTE: work will cease immediately, should this occur) associated with the work scope to be performed on the Property by PFS in the sampling of claim-pertinent materials from the Property. Releasors agree to said release based on the understanding that the repairs will be performed by a qualified licensed General Contractor and that every attempt will be made to match the present exterior colors and surface-visible sampling materials from the `sampling' locations. Releasors fully release both Releasees and PFS from any damage or liability with respect to any leaks that may arise on the Property as a result of the roof material sampling. Releasors agree to said release based on the understanding that a roofing contractor, licensed to practice in the State of Alabama, will perform the repairs for the sampled locations on the roof. Releasees and PFS agree to contact the Releasors or Releasors' attorney prior to taking any sample of any claim pertinent material to allow the photographing and cataloging of any such sample. Releasees and PFS also agree to provide a portion of any sample taken to Releasors or Releasors' attorney." (Emphasis added.)
The pertinent undertakings by the first-suit defendants were, at most, only to employ "a qualified licensed General Contractor," or (perhaps and) "a roofing contractor, licensed to practice in the State of Alabama," and to "bear[] responsibility for professional services compensation "(emphasis added) for the investigation and testing. An agreement by the first-suit defendants to employ such independent contractors and to pay their compensation for the investigation and testing does not constitute an undertaking of a nondelegable duty to the plaintiff by the first-suit defendants themselves to perform the testing without causing more leaks. On the *1207 contrary, the release by the plaintiff "fully releases both Releasees [the first-suit defendants] and PFS from any damages or liability with respect to water intrusion" and "from any damage or liability with respect to any leaks that may arise on the Property as a result of the roof material sampling."
Suppose, after the plaintiff added its claim in the first suit against those defendants for the additional leaks caused by PFS and DiVincenti, the first-suit defendants had not settled the suit but had won a summary judgment, at least against this particular claim. Suppose the grounds of such summary judgment were, first, that the status of PFS as an independent contractor insulated the first-suit defendants from liability for torts committed by the independent contractor or by DiVincenti and, second, that the plaintiff had released the first-suit defendants from liability for any additional leaks PFS or DiVincenti might cause. Would this Court reverse such a summary judgment by applying today's rationale that, by accepting the release from the plaintiff, the first-suit defendants undertook a nondelegable duty to the plaintiff to perform the testing without causing more leaks? Surely not. Yet, if such a case comes before us in the future, today's main opinion will require precisely such a ruling.
Because the first-suit defendants did not undertake a nondelegable duty to the plaintiff to perform the testing without causing more leaks, (1) the plaintiff could not legitimately sue the first-suit defendants for the additional leaks caused by the independent contractor PFS or by the individual DiVincenti, (2) the first-suit defendants did not necessarily defend the performance of the testing by PFS and DiVincenti, (3) the first-suit defendants did not constitute the "laboring oar" or the privies of PFS or DiVincenti, and (4) the first-suit settlement proceeds did not constitute a recovery for the additional leaks. Therefore, the first-suit settlement does not constitute a res judicata bar to this second lawsuit, the one now before us against PFS and DiVincenti for the additional leaks they caused.
The only justification for the summary judgment in favor of PFS is the obvious defense that the release expressly releases PFS from liability for causing more leaks. The plaintiff does not argue to the contrary. No reason, however, justifies the summary judgment in favor of DiVincenti.
NOTES
[1] A separate action was filed, apparently on the same grounds, against Badger-Stonewall Insurance Agency. The complaint in that action is not included in the record.
[2] The record in this case is incomplete in that it contains only selected pages from depositions and trial testimony, instead of the entire depositions and trial testimony.
[3] This Court concluded in Fuller, 545 So.2d at 759:

"In the present case, S & M contracted with T & E for the sale of a front-end loader with air conditioning. In the event that the air conditioning was not installed properly, S & M would look to T & E to rectify the problem. T & E undertook to provide air conditioning under the contract for sale and was thereby bound with the non-delegable duty to ensure that the air conditioning was installed in a reasonable manner."